UNITED STATES BANKRUPCY COURT
DISTRICT OF NEW MEXICO

In re: COLLEGE OF THE CHRISTIAN  Case No. 7-12-11195 JS
BROTHERS OF NEW MEXICO,

Debtor.

## MEMORANDUM OPINION

The Court held a trial on the merits of the Debtor's Objection to Proof of Claim No. 6 filed by Michael J. Hymel ("Objection to Claim") on October 9 and 10, 2013 and took the matter under advisement.[1] Little West appeared at the final hearing on behalf of the Debtor, College of the Christian Brothers of New Mexico ("College"), and Jeffrey A. Dahl appeared at the final hearing on behalf of the claimant, Michael J. Hymel, Ph.D (Professor Hymel). Professor Hymel filed a proof of claim in the College's bankruptcy case in the amount of $228,594.00 based on an alleged breach of contract. Professor Hymel entered into a Voluntary Early Retirement Agreement ("VERA") with the College with a requested retirement date of May 15, 2012. *See* Exhibit 3. The College declared a state of financial emergency in February of 2009, and ceased its operations in May of 2009 at the end of the 2008-2009 academic year. Professor Hymel contends that the College breached its obligations under the VERA and seeks to recover the amounts he asserts are due under the terms of the VERA. The College asserts that it has no obligations under the VERA, having properly declared a financial emergency and terminated all existing employment contracts.

At the close of the hearing, the Court invited the parties to submit post-trial briefs on the following matters: 1) principles of contract interpretation and enforcement; and 2) whether the Court should rely on parol evidence to interpret the parties' written agreement. Both parties

---
[1]Michael Hymel filed a response to the Objection to Claim. *See* Docket No. 52.

submitted post-trial briefs.[2]  After considering the parties' briefs and the evidence presented at the final evidentiary hearing, and being otherwise sufficiently informed, the Court finds that the College is not obligated to pay Professor Hymel for the amounts attributable to Professor Hymel's unfulfilled (but excused) teaching obligations under the VERA, but remains responsible for the retirement contributions and health benefits under the VERA.   Consequently, the Court will sustain, in part, and overrule, in part, the Objection to Claim, and allow Professor Hymel's claim in the amount attributable to the non-teaching benefits under the VERA.

## FACTS

Professor Hymel holds a Ph.D. in economics.  He became a full tenured professor at the College in 1994 and taught there for over twenty years

*The Early Retirement Option and the Phased Retirement Option*

In late 2007, Professor Hymel began to investigate his retirement options.  The Faculty Handbook in effect for the College from the summer of 2007 until July 13, 2008 (the "2007 HB") permitted a retiring tenured faculty member to elect either an Early Retirement Option or a Phased Retirement Option.  2007 HB, Appendix II.  *See* Exhibit B.

An eligible faculty member electing the Early Retirement Option would receive as a retirement benefit, depending of the age of retirement, an amount equal to either one year's full salary payable in monthly installments over a two-year period, or 50% of base salary over a period of one semester or one year.  If the faculty member were to die before such amounts were paid in full, the unpaid balance would be paid to the decedent's estate.  In addition, after retirement, a faculty member electing the Early Retirement Option is entitled to a TIAA-CREF contribution of 5% of retirement payments (sometimes referred to below as a "retirement

---

[2] Professor Hymel and the College filed simultaneous briefs on November 14, 2013.  *See* Creditor Hymel's Post-Trial Brief (Docket No. 93) and Debtor College of the Christian Brothers of New Mexico's Post-Trial Brief on Principles of Contract Law (Docket No. 94).

-2-

contribution"), and full health benefits at regular rates until Medicare age (65) or a lump sum payment equal to the sum of these payments. The retired faculty member would not teach any courses at the College in exchange for these retirement benefits, and would no longer have tenure after retirement.

An eligible faculty member electing the Phased Retirement Option may teach a fewer number of classes for a period of two or three years, but is obligated to teach at least 50% of a full teaching load. Under the Phased Retirement Option, advising and committee work is optional. The faculty member remains tenured, until retired, and is paid a salary equivalent to the faculty member's full-time salary prorated to reflect the reduced teaching load. If the faculty member were to die before such amounts were paid in full, the payments would discontinue. In addition, a faculty member electing the Phased Retirement Option is entitled to a TIAA-CREF contribution of 5% of the amount of the faculty member's salary for the period of the VERA and full health benefits at regular rates until Medicare age (65), both with no prorations.

Professor Hymel was eligible for both the Early Retirement Option and the Phased Retirement Option under the 2007 HB. He wanted to elect the Phased Retirement Option rather than the Early Retirement Option, but he also wanted a four-year phase out rather than the two or three year phase-out contemplated under the Phased Retirement Option outlined in the 2007 HB. He contacted John Allen, Interim Vice President for Academic Affairs for the College, in late 2007 or early 2008 to request a Phased Retirement Option that would establish a retirement date of May 2012. Mr. Allen informed Professor Hymel that the College could not offer a four-year phased retirement option because the College could not enter into a retirement agreement that differed from the terms outlined in Appendix II of the 2007 HB.

*Execution of both a Voluntary Retirement Agreement and
Faculty Contract of Employment, and the Faculty Handbook.*

To achieve a four-year phase out, Professor Hymel negotiated with Mr. Allen that Professor Hymel would work during the 2008 - 2009 academic year at a reduced teaching load equal to the reduced teaching load available under the Phased Retirement Option, and would work subject to the terms of the Phased Retirement Option for the next three academic years. To that end, Professor Hymel intended to enter into the following contracts: 1) a Faculty Contract of Employment ("FCE") for academic year 2008 – 2009; and 2) the VERA that would begin with academic year 2009-2010 and end in May 2012.

Professor Hymel entered into the VERA in April of 2008, consistent with the terms of Appendix II of the 2007 HB then in effect, reflecting his election of the Phased Retirement Option and covering three academic years beginning with the 2009 - 2010 academic year and ending on a retirement date of May 15, 2012. *See* Exhibit 3. The VERA provided for a teaching load of five courses per academic year for the academic years 2009 - 2010, 2010 - 2011, and 2011 - 2012. *Id.* The VERA provided the following benefits: 1) TIAA-CREF contribution of 5% of salary received, calculated at $3,003 per year based on an annual salary of $60,065 for a reduced teaching load of five courses; and 2) full health benefits at regular faculty rates until Medicare age (65) or a lump sum payment equal to the sum of these payments. *See* Exhibit 3. Attached to the VERA is a Voluntary Waiver of Rights and Claims Under the Age Discrimination in Employment Act ("VERA Voluntary Waiver"). The VERA Voluntary Waiver, signed by Professor Hymel on April 17, 2008, states:

> I, Michael J. Hymel have accepted an offer of voluntary phased retirement and the benefits provided with that offer in separate documents that are being executed by me.

-4-

Exhibit 3.

It was the College's practice to require every faculty member on the College's payroll to execute a FCE, not to exceed a term of three years, which would be in effect during the period of employment. On July 28, 2008, Professor Hymel entered into a FCE (the "Hymel FCE"). *See* Exhibit 1. The Hymel FCE provided for a term of three academic years beginning August 14, 2008 and ending May 14, 2011[3], and provided for an annual salary of $60,065. *Id.* The annual salary was Professor Hymel's salary for full time employment prorated based on his reduced credit hour workload.[4]

The period covered by the VERA and the Hymel FCE overlapped for two academic years: the Hymel FCE covered the first three years, whereas the VERA covered the second, third and fourth years until Professors Hymel's retirement date. Had the College not closed, Professor Hymel would have executed a new FCE for the fourth year.

The faculty handbook for the College is revised from time to time by the Board of Trustees of the College to reflect joint planning by the administration and a faculty council comprised of all full-time faculty members. *See* 2007 HB, Section II.B. and C (". . . the Board of Trustees must approve any change in this Handbook. Changes to the Handbook are to be made only after appropriate joint planning and effort between the Administration and the Faculty Council."); 2007 HB Section VI.B. ("Participation in the Faculty Council is a contractual obligation of all full-time faculty members."). The purpose of the faculty handbook is to flesh out relations between the faculty and the College. *Testimony of John Allen.*

---

[3] A three-year extended term contract is the maximum term of employment available under the Faculty Handbook in effect at the time the Hymel FCE was executed. *See* Exhibit A - Faculty Handbook of the College of Santa Fe approved July 14, 2008, Section 2.2.2 (providing for an extended term contract for either two or three academic years).
[4] Professor Hymel originally wanted a course load of four courses but ultimately he agreed to a course load of five courses under the Hymel FCE and the VERA.

-5-

The 2007 HB was revised and approved on July 14, 2008 (the "2008 HB") *before* Professor Hymel entered into the Hymel FCE. *See* Exhibit A. The Hymel FCE specifically provides that it is subject to Chapter II of the 2008 HB:

> This Contract is subject to the provisions of Chapter II of the Faculty Handbook, and applicable laws of the State of New Mexico and the United States, in force and effect during the Contract Term, all of which may be modified from time to time and are applicable as modified. Changes to Chapter II of the Faculty Handbook may be made applicable as changes to this Contract if approved by the Faculty and the College in accordance with established governance processes. The employee shall be assigned duties and responsibilities by the College a defined in Chapter II of the Faculty Handbook and agrees to perform all duties and responsibilities so assigned in accordance with the standards, policies, and provisions of the Chapter II of the Faculty Handbook.

Hymel FCE, ¶ 4 – Exhibit 3.

The Hymel FCE also contains a choice of law provision specifying New Mexico law, and a provision that it may be altered, amended, or modified only by a writing signed by both parties. Hymel FCE, ¶¶ 4 and 6 – Exhibit 3. In addition, the Hymel FCE contains the following integration clause:

> The Contract contains the entire agreement between the College and the Employee and supersedes any and all prior written or oral agreements or representations, including previously issued contracts for the same or overlapping Contract Term. Any changes of any kind in the employee's acceptance of this Contract shall constitute a counter-offer and shall automatically nullify the offer extended herein.

Hymel FCE, ¶ 9.

Attached to the Hymel FCE is an Exhibit A – Waiver and Release, and two Addenda. Professor Hymel signed the Waiver and Release on July 28, 2008. It provides, in part:

> Employee, in consideration of the Contract of Employment to which this Exhibit is attached and the terms and conditions thereof, does hereby fully and forever surrender, release and discharge the College of Santa Fe, its trustees, officers, agents, assigns, successors, representatives, insurers, indemnitors, and employees, individually and jointly, from any and all actions, causes of action, damages, sums of monies, charges, covenants, claims, claims of relief, and demands of whatsoever kind or nature, whether

-6-

known or unknown, in law or inequity, including without limitation any claims arising out of Employee's employment relationship with the College of Santa Fe, including, without limitation any rights or claims to tenure, continued employment, whether vested or not, any claims under or pursuant to any previous College of Santa Fe faculty handbook or policies, or other employment rights of any kind or nature whatsoever (excepting those rights and claims established by the Contract of Employment to which this Exhibit is attached) . . .

*Id.*

The first addendum to the Hymel FCE ("Addendum I"), not signed by Professor Hymel, obligates the employee to "perform the duties and responsibilities set out in the Faculty Handbook including 15 credit-hours of teaching."[5] *Id.* The second addendum ("Addendum II"), which was fully executed, provides:

> The Faculty Employment Contract presented on July 17, 2008 honors the Voluntary Early Retirement Agreement of April 17, 2008 and is exempt from Exhibit A, Waiver and Release attached to that contract. The College will uphold all obligations of the Voluntary Early Retirement Agreement. As per that agreement, the teaching load will remain at 15 credit-hours and non-teaching service to the College and/or Business Department is at the discretion of the Employee.

*Id.*

Professor Hymel signed Addendum II on July 28, 2008. John Allen signed Addendum II as the Interim Vice President for Academic Affairs. *Id.*

The 2008 HB "reflects the faculty-related policies of the College . . . in effect as of the date of publication." *See* Exhibit A. Chapter II of the 2008 HB "rescind[s] all prior related administrative policies and procedures, all contract provisions, and all faculty handbooks or personnel documents issued prior to this one pertaining to the faculty in the College." *Id.* Under the 2008 HB there are two types of faculty contracts: 1) a term contract for a period of up to one year; and 2) an extended term contract for a period of either two or three academic

---

[5]The salary amount reflected in the Hymel FCE translates to a course load of five courses.

-7-

years.  *See* 2008 HB, Sections 2.2.1 and 2.2.2.  The Faculty Personnel Policies outlined in Chapter II of the 2008 HB are

> part of every faculty member's contract of employment except to the extent that an individual faculty member's contract contains provisions that are inconsistent with, or disclaim incorporation of, terms and provisions of this Chapter.
>
> 2008 HB, Section 2.0.

The 2008 HB does not contain a retirement provision of any kind.

Professor Hymel obtained Addendum II to the Hymel FCE because he was concerned that the 2008 HB did not include any retirement provisions.  On July 21, 2008, after receiving the Hymel FCE for his review, he sent an e-mail communication to John Allen that stated, in part:

> In accordance with my rank, mine is an extended term contract which will run for a period of three years.  As you know, I have executed a phased retirement agreement with the College which runs for a three-year period commencing on or about August 15, 2009 and ending on or about May 15, 2012.  This means my faculty contract which commences August 14, 2008 overlaps my PRA [VERA] during the academic years 2009-10 and 2010-11.  To avoid the overlap, do you need to reissue my faculty contract as a term contract with a period that coincides with the 2008-2009 academic year?  I suspect a lawyer would say that one contract will supersede the other, but if that is the case, I need to be certain that the superseding contract is the PRA.
>
> . . . . As I read the waiver and release (Exhibit A) that I am asked to sign in conjunction with my faculty contract, if I sign the waiver, am I not relinquishing my rights, including any claims against the College, established in the provisions of the retirement agreement?
>
> *See* Exhibit 4.

In response, Mr. Allen sent the following e-mail communication to Professor Hymel dated July 22, 2008:

> I have attached an amended addendum to the faculty contract.  If this works for you, please return two signed copies to my office.  I will sign one and return it to you for your files.
>
> *See* Exhibit 5.

Mr. Allen drafted Addendum II to the Hymel FCE which included the following provision: "The College will uphold all obligations of the Voluntary Early Retirement Contract." *See* Exhibit 1. Professor Hymel signed Addendum II on July 28, 2008. *Id.*

John Allen testified that the College treats a VERA as a modifier to a FCE, and that a VERA could not exist without a contract for employment with the College. In his view, the VERA is not a retirement agreement, but rather a work arrangement with the College that requires the faculty member to teach a reduced course load in exchange for the reduced pay and other benefits outlined in the VERA. Because all faculty members must have a FCE in order to be paid for teaching classes at the College, a faculty member electing the Phased Retirement Option under the 2007 HB would be required to enter into a FCE for each year covered under a VERA.

*The College's Actions in the Face of Extreme Financial Crisis*

The 2007 HB contains the following provisions with respect to the elimination of tenured faculty positions under a condition of financial exigency:

> Financial exigency is an imminent financial crisis which threatens the solvency of the College and which cannot be alleviated without a reduction in force. Only the Board of Trustees can declare a financial exigency. Occupied probationary and tenured faculty positions are subject to elimination, and tenured positions subject to reallocation, once a financial exigency is formally declared by the Board.

2007 HB, Section IV.C.1.

Chapter II of the 2008 HB contains the following provision regarding the termination of contract rights in the event of a financial emergency:

> 1.7.3 **Reduction in Force.** The contract rights of faculty may be terminated for reason of financial emergency or program discontinuance. "Financial emergency" exists when the financial resources available to the College for instructional services is determined by the Board of Trustees to be inadequate to maintain the level of faculty staffing then in place.

-9-

2008 HB, Section 2.7.3.

By April 2008 when Professor Hymel elected the Early Retirement Option and executed the VERA, the College was experiencing financial difficulties, which was common knowledge among the faculty and staff of the College. In an effort to solve its financial problems, the College entered into negotiations with Laureate Education. Laureate Education loaned the College operating funds during the period that Laureate Education performed its due diligence, but a final agreement with Laureate Education was never reached. Subsequent attempts to reach an agreement with New Mexico Highlands University to acquire the College also failed. Ultimately, the Board of Directors of the College issued a declaration of financial emergency in February of 2009. *See* Exhibit I (email from College of Santa Fe sent to the Campus Community dated February 19, 2009, reporting that the Board of Trustee s approved a Declaration of Financial Emergency on February 18, 2009.)

The College closed its doors in May of 2009 at the end of the 2008-2009 academic year. *See* Exhibit J (Letter dated February 23, 2009 from the Director of Human Resources to Professor Hymel stating that the College "will cease operations on Friday, May 22, 2009."). At the time the Board of Directors of the College issued a declaration of financial emergency, the 2008 HB was in effect. At that time, Professor Hymel was teaching at the College pursuant to the Hymel FCE. The term of the VERA had not yet commenced.

*The College Commences a Bankruptcy Case*

The College filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 27, 2012. Professor Hymel filed a proof of claim in the amount of $228,594.00. *See* Claim No. 6.[6] Professor Hymel's claim is based on the following amounts he believes are due under the

---
[6]Professor Hymel's proof of claim was not admitted into evidence at the trial. The College does not dispute the fact that Professor Hymel asserts a claim in the amount of $228,594. The Court takes judicial notice of the Proof of

-10-

VERA: 1) $180,195.00 attributable to three years' reduced salary at the rate of $60,065.00 per year; 2) $9,009.00 representing a 5% TIAA/CREF contribution of $3,003.00 per year for three years; and 3) $39,390 representing the lump sum of the health benefit payments through age 65.[7]

DISCUSSION

To resolve the pending Objection to Claim, the Court must determine whether the VERA is subject to the 2008 HB which allows the College to terminate existing faculty contracts upon the declaration by the College's Board of Trustees of a financial emergency, and thereby extinguish any obligation to pay salaries for work not yet performed under the terminated contracts. Professor Hymel asserts that the VERA is separate from the Hymel FCE and is not subject to the 2008 HB because Addendum II to the Hymel FCE expressly provides that the "College will uphold all obligations of the [VERA]." Professor Hymel argues further that the only way the College could alter the terms of the VERA is through additional consideration to him, but that none was granted. The College counters that the VERA, the Hymel FCE, and the 2008 HB together comprise the complete, integrated agreement of the parties; consequently, because the College has the power to declare a financial emergency under the 2008 HB and terminate any existing faculty contracts, it is no longer obligated under the terms of the VERA. The College contends further that the VERA is a "pay for services" contract such that Professor Hymel is not entitled to receive the benefits under the VERA unless and until he fulfills his teaching obligations under the VERA. Professor Hymel disagrees that the VERA is a "pay for

---

Claim filed in the College's bankruptcy case. *See* Fed.R.Evid. 201 (the court may take judicial notice on its own of a fact not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *In re Carrozzella & Richardson,* 302 B.R. 416, 421 (Bankr.D.Conn. 2003)(taking judicial notice that proofs of claim were filed in a bankruptcy case).

[7]The proof of claim does not break down the total amount claimed into the following separate components: salary; TIAA-CREF; and health benefits. But because the VERA sets forth the annual salary amount and the annual TIAA-CREF contribution, the Court can compute the amount attributable to the health benefits by subtracting the total salary and TIAA-CREF contributions from the total amount claimed. 228,594 - ((60,065 x 3) + (3,003 x 3)) = $39,390.

-11-

services" type of contact, and points out that, even if it were, because the College failed to offer him the courses that he was ready, willing, and able to teach it excused any obligation on his part to teach in exchange for payment.

As explained below, the Court finds and concludes that 1) the VERA, the Hymel FCE, and the 2008 HB together comprise the parties' integrated agreement; 2) because the College had the power to declare a financial emergency and terminate existing faculty employment contracts, the College's failure to offer Professor Hymel the courses contemplated under the VERA did not constitute a breach of contract by the College; 3) the College's declaration of financial emergency did not excuse the College from its obligations under the non-employment aspects of the VERA; 4) the College's termination of Professor Hymel's employment after declaring a financial emergency excuses Professor Hymel's obligation to teach under the VERA; 5) the College's failure to perform its retirement contribution and health benefits obligations under the VERA constitutes a material breach of the VERA; and 6) Professor Hymel is entitled to damages for the College's breach of the VERA in the amount equal to the College's retirement contribution and health benefits obligations under the VERA.

   A.   The Parties' Agreement

The Restatement of Contracts defines a completely integrated agreement as "an integrated agreement adopted by the parties as a complete and exclusive statement of the terms of the agreement." Restatement (Second) of Contracts § 210(1) (1981). *See also,* Restatement (Second) of Contracts § 209(1) (1981)("An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement."). A partially integrated agreement, on the other hand, "is an integrated agreement other than a completely integrated agreement." Restatement (Second) of Contracts § 210(1) (1981). Ordinarily, a subsequent, fully

-12-

Case 12-11195-sh7    Doc 105    Filed 12/09/13    Entered 12/09/13 17:09:03    Page 12 of 19

integrated contract effectively cancels all prior agreements between the parties that are inconsistent with or fall within the scope of the subsequent contract. *See* Restatement (Second) of Contracts § 213 ("(1) A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them. (2) A binding completely integrated agreement discharges prior agreements to the extent they are within its scope."); Restatement (Second) of Contracts § 209 cmt. a (1981)("An integrated agreement supersedes contrary prior statements, and a completely integrated agreement supersedes even consistent additional terms.").

The Court must determine whether an agreement is partially or completely integrated before interpreting its meaning. *See* Restatement (Second) of Contracts § 210(3) (1981) ("Whether an agreement is completely or partially integrated is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule."). However, the Court may consider extrinsic evidence to "help determine the level and scope of integration of the contract." *Nellis v. Farmers Ins. Co. of Arizona,* 272 P.3d 143, 153, 2012-NMCA-020, ¶49 (Ct.App. 2011)(pointing out that, under New Mexico law, "the parol evidence rule [does] not preclude the introduction of extrinsic evidence designed to 'determine the circumstances under which the parties contracted and the purpose of the contract.'")(quoting *Levenson v. Mobley,* 106 N.M. 399, 403, 744 P.2d 174, 178 (1987)); Restatement (Second) of Contracts § 214 (1981)("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish (a) that the writing is or is not an integrated agreement; (b) that the integrated agreement, if any, is completely or partially integrated; (c) the meaning of the writing, whether or not integrated . . . .").

Here, Professor Hymel and the College entered into the VERA in April of 2008 based on the Phased Retirement Option available under the 2007 HB. The College subsequently adopted the 2008 HB with an effective date of July 14, 2008. Thereafter, the parties entered into the Hymel FCE on July 28, 2008. The Hymel FCE contains an integration clause:

> This Contract contains the entire agreement between the College and the Employee and supercedes any and all prior written or oral agreements or representations, including previously issued contracts for the same or overlapping Contract Term. Any changes of any kind in the employee's acceptance of this Contract shall constitute a counter offer and shall automatically nullify the offer extended herein.

Hymel FCE, ¶ 9.

Yet, Addendum II to the Hymel FCE specifically references the VERA by stating that the Hymel FCE "honors the Voluntary Early Retirement Agreement;" it exempts the VERA from the Waiver and Release attached to the Hymel FCE; and it provides that "[t]he College will uphold all obligations of the Voluntary Early Retirement Agreement." Addendum II to the Hymel FCE. The Hymel FCE provides that it is subject to the terms of Chapter II of the 2008 HB. *See* Hymel FCE, ¶ 4 ("This Contract is subject to the provisions of Chapter II of the Faculty Handbook . . . in force and effect during the Contract Term, all of which may be modified from time to time and are applicable as modified."). Professor Hymel and John Allen both testified that Addendum II was added to the Hymel FCE to ensure that the VERA would be enforceable. The purpose of Addendum II was to address Professor Hymel's concerns that by executing the Hymel FCE he would forfeit all benefits under the VERA because the 2008 HB did not contain any retirement provisions and the Waiver and Release purported to discharge the College from any claims based on a prior faculty handbook. *See* Exhibit 4.

A writing that the parties have agreed is final with respect to some matters does not necessarily establish all of the matters the parties have agreed upon. Restatement (Second)

Contracts § 210, cmt. a (1981)(the definition of an integrated agreement must be read "to reject the assumption sometimes made that because a writing has been worked out which is final on some matters, it is to be taken as including all the matters agreed upon."). And an integrated agreement may consist of more than one document. *See* Restatement (Second) of Contracts § 209(1) (1981) ("An integrated agreement is a writing *or writings* constituting a final expression of one or more terms of an agreement.")(emphasis added). Construing the Hymel FCE, the VERA, and the 2008 HB as comprising the totality of the parties' agreement is consistent with: 1) the College's policy that all faculty teaching at the College must have a FCE; 2) Professor Hymel's general understanding that all faculty of the College are governed by the terms of the faculty handbook currently in place; 3) Addendum II which provides that the Hymel FCE did not supersede the VERA, and 4) the overlap between the Hymel FCE and the VERA, which both covered the 2009-2010 and 2010-2011 academic years and both addressed the amount of Professor Hymel's salary during those years for teaching at the College.

Under these circumstances, the Court finds that neither the Hymel FCE nor the VERA is a fully integrated agreement. Rather, the Hymel FCE, the VERA, and the 2008 HB must be read together as the complete agreement between the parties. *Cf. Nellis v. Farmers,* 272 P.3d at 154, 2012-NMCA-020 at ¶ 53 (finding that a partially integrated agreement could be treated as "a separate agreement that is actually part of a larger comprehensive arrangement between the parties that should be construed together.")(citing *Harp v. Gourley,* 68 N.M. 162, 170, 359 P.2d 942, 947 (1961) and *Master Builders, Inc. v. Cabbell,* 95 N.M. 371, 373-74, 622 P.2d 276, 278-79 (Ct.App. 1980)).

B. The Breach

The VERA contains two components: 1) a component applicable to Professor Hymel's duties as tenured professor at the College pursuant to which the parties agreed that Professor Hymel would teach a reduced course load as a tenured professor over a three-year period, with optional non-teaching services to be fulfilled at his discretion in exchange for a reduced annual salary in the amount of $60,065; and 2) a retirement component pursuant to which Professor Hymel would retire on May 2012 after more than twenty years of service to the College in exchange for receiving contributions to TIAA/CREF and health benefits to age sixty-five. Those retirement benefits were based on a calculation that was substantially the same as if Professor Hymel had elected the Early Retirement Option and had retired before receiving the benefits. *See* Exhibit 3 and Exhibit B, Appendix II. Like the VERA, the Hymel FCE contains terms applicable to Professor Hymel's duties as tenured professor in exchange for an annual salary in the amount of $60,065. Unlike the VERA, however, the Hymel FCE does not contain a retirement component pursuant to which Professor Hymel would retire on May 2012 and would receive TIAA/CREF contributions and health benefits the same as a full-time professor or a professor who had elected the Early Retirement Option.

Under the Hymel FCE, the College retained the right to declare a financial emergency pursuant to Chapter II of the 2008 HB and thereby extinguish obligations to compensate professors in exchange for their teaching at the College. *See* 2008 HB, Section 2.7.3 ("The contract rights of faculty may be terminated for reason of financial emergency or program discontinuance.").[8] Likewise, the component of the VERA applicable to Professor Hymel's

---

[8]As the College points out, the ability to terminate existing faculty employment contracts or to discontinue courses due to financial crisis is generally consistent with an educational institution's inherent rights. *See, e.g., Board of Community College Trustees v. Adams,* 117 Md.App. 662, 670, 701 A.2d 1113, 1117 (Ct. Spec. App. 1997)("the great weight of authority supports a holding that tenured professors may be terminated for reasons unrelated to them

-16-

duties and salary as tenured professor, which overlapped with corresponding provisions in the Hymel FCE, was subject to the rights of the College under the 2008 HB to declare a financial emergency. This is consistent with Addendum II, which provides that The College will uphold all obligations of the VERA. That language necessarily applies only to existing, enforceable obligations. If the College's obligation to pay salaries for unperformed work was extinguished in accordance with the agreement of the parties, as happened here when the College declared a financial emergency and closed its doors, there no longer existed an obligation on the part of the College under either the Hymel FCE or the VERA to pay Professor Hymel a salary for services he had not yet performed. Professor Hymel's teaching obligations under the VERA were likewise excused since the College's closure prevented him from rendering that performance; the availability of courses for Professor Hymel to teach was an implied condition to his teaching obligations under the VERA. *See* Williston on Contracts § 38.1 (4th ed. 2010)("'A condition precedent is a fact or event which the parties intend must exist to take place before there is a right to performance.'")(quoting *Lach v. Cahill,* 138 Conn. 418, 85 A.2d 481 (1951)); Restatement (Second) of Contracts § 224 (1981)("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."); Restatement (Second) of Contracts § 226 (1981)("An event may be made a condition either by the agreement of the parties or by a term supplied by the court."); *Solid Concepts, LLC v. Fallen Soldiers, Inc.,* 2011 WL 1375578, *3 (D.Md. Apr. 12, 2011)(observing that "[w]here a contractual duty is subject to a condition precedent [including an implied

---

personally—such as discontinuance of courses, school consolidations, and ... financial shortfalls."); *Graney v. Board of Regents,* 92 Wis.2d 745, 759, 286 N.W.3d 138, 145-146 (1979), *abrogated on other grounds, Bicknese v. Sutula,* 260 Wis.2d 713, 660 N.W.2d 289 (2003)("Several jurisdictions have recognized that educational governing boards possess an inherent authority to discharge tenured faculty for reasons of financial exigency which is distinct from the authority to discharge for cause.")(citations omitted). *See also, Krotkoff v. Goucher College,* 585 F.2d 675, 679 (4th Cir. 1978)(acknowledging that a tenured professor's contract may be terminated based on "financial exigency").

-17-

condition], there is no duty of performance until the condition precedent has occurred or been performed.")(citations omitted).

However, by declaring a financial emergency the College did not discharge its unperformed obligations under the retirement component of the VERA. That portion of the College's obligations did not overlap with the Hymel FCE and was not subject to Chapter II of the 2008 HB. Under the VERA, the College agreed to pay Professor Hymel retirement benefits consisting of certain retirement contributions for a period of three years and health benefits through age 65. The College's failure to pay the retirement contributions and health benefits under the VERA is a material breach of the VERA entitling Professor Hymel to damages.

C. The Damages

"A claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance." Restatement (Second) of Contracts § 236(1) (1981). Here, the only remaining rights to performance to which Professor Hymel is entitled under the VERA are the College's obligation to make retirement contributions and pay health care benefits. Professor Hymel is, therefore, entitled to a claim in the total amount of $48,399.00 comprised of the retirement contributions ($3,003 x 3 years) and lump sum payment of health benefits ($39,390) due under the retirement component of the VERA.

The Court will enter a separate order consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: December 9, 2013

-18-

Case 12-11195-sh7    Doc 105    Filed 12/09/13    Entered 12/09/13 17:09:03 Page 18 of 19

COPY TO:

Jeffrey A Dahl
Keleher & McLeod, P.A.
Attorney for Michael J. Hymel
PO Box AA
Albuquerque, NM 87103

Little V. West
Justin W. Miller
Long, Komer & Associates
Attorneys for College of the Christian Brothers of New Mexico
2200 Brothers Road
Santa Fe, NM  87502